UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CANDIDO BAEZ,

                          Plaintiff,                             No. 01-CV-807
                                                               (NAM/DRH)

         v.

J. HARRIS, Deputy Superintendent, Shawangunk
Correctional Facility; DONALD SELSKY, Director
Special Housing Unit Program; and QUARTARONE,
Nurse, Shawangunk Correctional Facility,

                          Defendants.

---

**APPEARANCES:**                            **OF COUNSEL:**

CANDIDO BAEZ
Plaintiff Pro Se
No. 90-A-3203
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. ANDREW M. CUOMO              MARIA MORAN, ESQ.
Attorney General for the                  Assistant Attorney General
    State of New York
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Candido Baez ("Baez"), an inmate in the custody of the New York

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants,[2] three DOCS employees, violated his constitutional rights under the Eighth and Fourteenth Amendments. Am. Compl. (Docket No. 49) at ¶¶ 50-53. Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 75. Baez opposes the motion. Docket No. 76. For the reasons which follow, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are set forth in the light most favorable to Baez as the non-movant. See Section II(A) infra.

### A. Disciplinary Hearing

At all relevant times, Baez was incarcerated at Shawangunk Correctional Facility ("Shawangunk"). Am. Compl. at ¶ 1. On November 8, 1999, while in the A yard, Baez swung a five-pound weight and hit inmate Garbez on the left side of his head. Moran Aff. (Docket No. 75), Ex. A at 1. Another inmate, Valdez, began to fight with Baez and both ignored orders from corrections officer Riopelle to stop. Id. A response team was able to separate Valdez and Baez, removed them from the yard, and brought both inmates to the infirmary. Id. Baez was issued a misbehavior report for assault on an inmate,

---

[2] Harris, Selsky, and Quartarone. Defs. Mem. of Law (Docket No. 75) at 2. The remaining defendant, Doctor Forte, was dismissed following his death in 2004. Docket No. 79.

-2-

fighting, refusing a direct order, and having a weapon. Id. On the same day, corrections officers searched Baez's cell and confiscated a bottle of expired medication, a broken ruler, and a hard plastic plate. Id. at 2. Baez received another misbehavior report for possessing unauthorized medication, contraband, property in unauthorized area, and an altered item. Id.

On November 10, 1999, the commencement of Baez's Tier III disciplinary hearing[3] was adjourned to November 16, 1999 because the hearing officer, Deputy Superintendent of Programs J. Harris, was unavailable. Docket No. 24, Ex. C; Hrg. Tr. at 1. Baez's assistant for the hearing, Boyham,[4] first met with Baez on November 10, 1999 and completed his assistance on November 12, 1999. Hrg. Tr. at 2. On November 16, 1999, Baez's disciplinary hearing commenced. Hrg. Tr. at 1. On November 23, 1999, Harris found Baez guilty of assault, fighting, possessing a weapon, refusing a direct order, and having an altered item and found him not guilty of unauthorized medication, having property in an unauthorized area, and possessing contraband. Moran Aff., Ex. A at 3-4. Baez was sentenced to twenty-four months in the Special Housing Unit ("SHU"),[5]

---

[3] DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendents' hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2006).

[4] Boyham, an original defendant in this matter, was dismissed from the case on a motion for summary judgment on September 29, 2003. Docket No. 29.

[5] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2006). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

loss of packages, commissary, and telephone privileges, and the recommended loss of twenty-four months of good time credit.  Id.  Additionally, Baez lost his inmate grade-pay and program assignment.  Compl. (Docket No. 1) at ¶ 17.

Baez appealed Harris's determination.  Docket No. 24, Ex. H.  On March 21, 2000, Baez filed a petition pursuant to N.Y. C.P.L.R. Art. 78.[6]  Moran Aff., Ex. C.  The defendants received three extensions of time to answer Baez's petition.  Am. Compl. at ¶ 10.  On May 17, 2000, Donald Selsky, Director, Special Housing/Inmate Disciplinary Program, modified Baez's punishment from twenty-four months to twelve months.  Moran Aff., Ex. B at 1-2.  On October 26, 2000, Baez's petition was transferred from Ulster County Supreme Court to the Appellate Division, Third Department.  Moran Aff., Ex. C at 3.  On March 12, 2001, Selsky administratively reversed the disciplinary determination because the hearing officer considered medical evidence not on the record.  Moran Aff., Ex. B at 4.  On June 14, 2001, Baez's Article 78 petition was denied as moot.  Moran Aff., Ex. C at 3-4.

### B.  Medical Treatment

On December 14, 1999, Baez had hernia repair surgery at Albany Medical Center.  Am. Compl. at ¶ 33.  Baez was to remain on bed rest in the hospital for three days.  Id.  On December 16, 1999, Baez was discharged from the hospital.  Id.  Baez was instructed to keep the dressing dry and intact for two days and then remove the outer

---

[6] N.Y. C.P.L.R. Art. 78 (McKinney 1994 & Supp. 2006 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

dressing and resume showering.  Davidson Decl. (Docket No. 75), Ex. 1.  Baez was not allowed to engage in lifting, strenuous work, straining or reaching for six weeks and was allowed to return to work or school.  Id.   A follow-up examination at the prison clinic was also required.  Id.  Quartarone removed Baez's bandages and padding from the incision area against doctor's orders.  Am. Compl. at ¶ 33.

On the day of Baez's discharge, he was ordered to board a bus for transfer to Downstate Correctional Facility.  Id.  Baez was taken on a bus trip which included stops at Shawangunk and Wallkill Correctional Facility where Baez began to vomit and experience severe pain.  Am. Compl. at ¶ 34.  Baez's requests to be taken to the infirmary were ignored.  Id.  This action followed.

### C.  Procedural History

Baez commenced this action by filing a complaint on May 25, 2001.  See Compl.  Defendants filed a motion for summary judgment on December 13, 2002.  Docket Nos. 21-23.  As a result of that motion, several claims and defendants were dismissed. Docket No. 27.  That decision was modified on November 18, 2004 and required Baez to file an amended complaint within thirty days of the order.  Docket No. 47.  Baez complied and filed his amended complaint on December 17, 2004.  Docket No. 49.  This motion for summary judgment of the remaining defendants followed.  Docket No. 75.

### II. Discussion

Baez asserts three causes of action in his amended complaint.  The first alleges

that defendant Selsky failed to correct behavior that violated Baez's Eighth and Fourteenth Amendment rights. The second alleges that defendants Harris and Selsky deprived him of his due process rights in connection with a prison disciplinary hearing. The third alleges that defendant Quartarone was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[7]  Am. Compl. at ¶¶ 50-53. Defendants seek judgment on all claims.

### A.  Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder

---

[7] Any claims against Dr. Forte have been dismissed and are not being considered on this motion.  See note 2 supra.

of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.[8] Id.; Triestman v. Fed. Bureau of Prisons, __ F.3d __, 2006 WL 3499975, at *5 (2d Cir. Dec. 5, 2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment

#### 1. Defendant Quartarone

In his third cause of action, Baez contends that "less than forty (40) hours after the [hernia] surgery, defendant Quartarone . . . removed the bandages and padding from the incision area of [his] operation," thereby acting with deliberate indifference to his medical needs. Am. Compl. at ¶ 33. Defendants contend that Baez has failed to exhaust his administrative remedies on this claim and, in the alternative, the claim is without merit.

#### a. Failure to Exhaust

Defendants contend that Baez has not exhausted his administrative remedies with

---

[8]Baez has, however, filed at least seven other actions in the federal courts of New York since 1990. U.S. Party/Case Index (visited Jan. 8, 2007) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

regard to the claim that his Eighth Amendment rights were violated by defendant Quartarone. This assertion is based on the fact that Baez did not raise the issue of his surgery dressings being removed prematurely in his Grievance No. UST-2681-00. Defs. Mem. of Law at 10; see also Moran Aff., Ex. E.

Issues that have previously been determined become the law of the case. In re Lynch, 430 F.3d 600, 604 (2d Cir. 2005) (citing Quern v. Jordan, 440 U.S. 332, 348 n.18 (1979)). A district court may reconsider its own decision if the law has since changed, new evidence becomes available, to correct an error, or if a "manifest injustice would otherwise ensue." Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber, 407 F.3d 34, 44 (2d Cir. 2005).

Here, this Court has already decided that Baez did not exhaust his claim regarding removal of the bandages because he never filed a grievance regarding it. Docket No. 27. The Report-Recommendation and Order containing that finding was adopted in full by the district court on September 29, 2003. Docket No. 29. In response to this Court's decisions, Baez filed a grievance on October 3, 2003 where he raised the issue of the early bandage removal. Am. Compl., Ex. A. That grievance was rejected as untimely in the absence of any reason provided for the delay. Id. Baez appealed the decision to reject his late grievance, but that decision was affirmed. Id. Although Baez attempted to remedy his failure to exhaust, filing an untimely grievance does not amount to an exhaustion of remedies. Williams v. Comstock, 425 F.3d 175, 176 (2d Cir. 2005). Further, since this Court finds no reason to reconsider its previous decisions, Baez has not exhausted his claim for removal of the bandages.

**b. Medical Treatment**

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)). An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious. Chance, 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew

-9-

of and disregarded the prisoner's serious medical needs. Id. at 702. Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate. Id. at 703. Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Even assuming that hernia repair surgery is a serious medical need, Baez failed to raise a question of material fact with regard to the alleged deliberate indifference of Quartarone in removing his bandages. The bandages were removed on the second post-operative day, which was within the instructed time period recommended by Baez's surgeon. Davidson Decl. at ¶¶ 3-4. Therefore, it is recommended in the alternative that defendants' motion for summary judgment on this ground be granted.

### 2. Defendant Selsky

Baez alleges that Selsky "contributed to and proximately caused the . . . violation of [his] Eighth and Fourteenth Amendment Rights." Am. Compl. at ¶ 50. Summary judgment in favor of all defendants, including Selsky, with regard to Baez's Eighth Amendment claim resulting from his disciplinary hearing has already been granted. Docket No. 27 at 16. As such, Baez's claim against Selsky for a violation of his Fourteenth Amendment due process rights in connection with his prison disciplinary hearing is dismissed. Baez's claim against Selsky for his alleged involvement in Baez's Eighth Amendment claims relative to his medical care remain at issue.

### a. Personal Involvement

Defendants contend that Baez cannot demonstrate the personal involvement of Selsky in any Eighth Amendment violation.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). The doctrine of respondeat superior is not a substitute for personal involvement. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Thus, supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Supervisory personnel may be considered "personally involved," however, if they participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

In his amended complaint, Baez's only allegation as to the personal involvement of Selsky is that he and his father wrote Selsky a letter documenting the violations of Baez's rights. Am. Compl. at ¶ 42. However, "receiving a letter from an inmate does not constitute sufficient personal involvement to generate supervisory liability." Petty v. Goord, No. Civ. 00-803(MBM), 2002 WL 31458240, at *8 (S.D.N.Y. Nov. 4, 2002). Further, there is no evidence that Selsky participated here in the alleged violations or created a policy which allowed constitutional violations to continue.

Therefore, it is recommended that defendants' motion for summary judgment as

to Selsky be granted on this ground.

### C. Fourteenth Amendment

Defendants Harris and Selsky contend that Baez's due process claim should be dismissed and that qualified immunity bars Baez's claim.

#### 1. Liberty Interest

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Here, this Court has already decided that Baez has raised a question of fact as to whether twelve months spent in SHU establishes a protected liberty interest. Docket Nos. 27, 29, & 47; see also Colon v. Howard, 215 F.3d 227 (2d Cir. 2000) (holding that 305 days spent in normal SHU conditions was sufficient to raise a question of significant hardship). Defendants' motion on this ground should, therefore, be denied.

-12-

### 2. Process Provided

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing officer. Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974)). Additionally, the finding of guilt must be supported by some evidence in the record to comport with due process. Massachusetts Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); Gaston v. Coughlin, 249 F.3d 156, 162 (2d Cir. 2001).

Again, this Court has already determined that there is a question of fact as to the fourth prong of Wolff. Docket No. 27 at 12;.see also In re Lynch, 430 F.3d at 604 (quoting Quern, 440 U.S. at 348 n.18)). As such, it is recommended that defendants' motion for summary judgment on this ground be denied.

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional

violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230.  Here, the issue of defendants entitlement to qualified immunity has already been decided in Baez's favor.  Docket Nos. 27, 29, & 47.

Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 75) be:

1. **GRANTED** as to Quartarone and Selsky in all respects; and

2. **DENIED** as to Harris as to the due process claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  January 9, 2007
       Albany, New York

_David R. Homer_
United States Magistrate Judge